

2425 Post Road, Suite 205
Southport, CT 06890
(203) 254-1900  Office
(203) 222-4833  Fax
www.bbgllp.com

**Patrick W. Begos**
**Christopher G. Brown**
**Daniel Green**

December 27, 2016

**By ECF**
Hon. Ronnie Abrams
United States District Court
40 Foley Square
New York, NY 10007

    Re:   McFarlane v. First Unum Life Insurance Company
            1:16-cv-07806-RA

Dear Judge Abrams:

    This firm represents defendant, First Unum Life Insurance Company ("First Unum"), in this action. I write to oppose plaintiff's December 21, 2016 letter motion seeking an *in camera* review of four of the six documents listed on First Unum's privilege log.

    Plaintiff is not entitled to an *in camera* review simply because her attorney asks for one. The Supreme Court has held that "a blanket rule allowing *in camera* review" to determine if an exception to the attorney-client privilege applies would damage the attorney-client relationship, impact due process, and place undue burden on the District Courts. *U.S. v. Zolin*, 491 U.S. 554, 571 (1989) ("There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents."). Thus, in order to justify an *in camera* review, plaintiff must "present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability." *United States v. Zolin*, 491 U.S. 554, 574–75 (1989).

    First Unum has prepared an amended privilege log, a copy of which is attached. Each of the documents that plaintiff asks the Court to review is a communication between a First Unum claim handler and an in-house attorney, regarding letters that plaintiff's attorney wrote to First Unum. If the Court believes that the information provided in the amended privilege log is insufficient to determine the existence of privilege, First Unum will certainly provide the documents for *in camera* review. But, if the Court concludes, as it should, that First Unum has established is claim of privilege, then plaintiff has not provided any legitimate basis for *in camera* review, because the contents of the documents have no bearing on application of the fiduciary exception.

<pre>



Hon. Ronnie Abrams
December 27, 2016
P a g e | **2**
</pre>

The fiduciary exception to the attorney-client privilege is not applicable in this case. The leading American case on the exception is *Riggs Nat. Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709 (Del.Ch.1976). In *Riggs*, the beneficiaries of a common-law trust sued the trustees for breach of trust regarding a tax matter, and sought production of a memorandum written by the trustees' counsel regarding that very tax matter. *Riggs* held that the memorandum "was prepared ultimately for the benefit of the beneficiaries of the trust[.]" 355 A.2d at 711. The most significant factor in the court's decision was that the trustees paid the lawyers with *trust* funds: "I conclude that the legal services were performed at the request of the trustee for the benefit of the beneficiaries of the trust. Indeed, were this not the case, it may have been improper to charge the trust estate with cost of the legal services." *Id.* at 712.

Of course, there is a fundamental difference between a trust, in which a fiduciary holds legal title to assets in which beneficiaries have equitable ownership, and an employee welfare benefit plan, in which there is no trust corpus. In this regard, it is important to distinguish between cases applying the fiduciary exception to an ERISA pension plan, which is very similar to a trust, and a benefit plan providing insurance, which is not at all like a trust. *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 234 (3d Cir. 2007) ("ERISA fiduciaries, however, come in many shapes and sizes, and we do not believe that the logic underlying the fiduciary exception applies equally to all").

The Second Circuit has applied the fiduciary exception to *employers* who are acting as Plan Administrators or Trustees, *In re Long Island Lighting Co.*, 129 F.3d 268, 273 (2d Cir. 1997). But it has not extended the exception to an *insurance company* acting as a claim administrator. There is ample reason why it would be inappropriate to extend the exception to an insurer, as explained by *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 234 (3d Cir. 2007) ("We conclude that the fiduciary exception does not apply to an insurer … because the plaintiff-beneficiaries are not the "real" clients obtaining legal representation").

In support of its holding, *Wachtel* cited several factors differentiating an insurance company from a common-law or ERISA trustee: (i) "An ERISA beneficiary has no ownership interest in the insurer's assets before a benefit is paid[;]" (ii) the rule that insurers have a structural conflict of interest in determining claims "undermines the argument that when an insurer retains counsel, the real clients being served are the beneficiaries[;]" (iii) "[e]ven while acting as a loyal fiduciary to the beneficiaries of one plan, [an insurer] must be mindful of the duties it owes to the beneficiaries of other customer plans, all of whom are paid from the same pool of assets." 482 F.3d at 235-36. Perhaps most importantly, *Wachtel* noted that insurers pay for legal services out of their own assets. *Id.* Combining these factors, *Wachtel* held: "an insurer which sells insurance contracts to ERISA-regulated benefit plans is itself the sole and direct client of counsel retained by the insurer, not the mere representative of client-beneficiaries, and not a joint client with its beneficiaries." 482 F.3d at 236. This Court should be guided by *Wachtel* in the absence of contrary authority from the Second Circuit.

The Supreme Court has added its support to the notion that all fiduciaries are not the same for purposes of applying the fiduciary exception. *U.S. v. Jicarilla Apache Nation*, 131 S. Ct. 2313 (2011), involved a dispute whether the US government, in its capacity as trustee of Native



American funds, was required to disclose privileged material. Much of the Court's language and reasoning is directly applicable to ERISA disputes.

*Jicarilla* observed that the government's "trustee" status is governed by statute rather than common law, and that "Congress may style its relations with the Indians a 'trust' without assuming all the fiduciary duties of a private trustee[.]"131 S. Ct. at 2323. This is identical to ERISA, which maintains important differences from the common law of trusts. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 447 (1999) ("Although trust law may offer a starting point for analysis in some situations, it must give way if it is inconsistent with the language of the [ERISA] statute, its structure, or its purposes." [quotation marks omitted]).

Like *Riggs* and *Wachtel*, *Jicarilla* gave prominence to the source of funds used to pay the attorneys: "[c]ourts look to the source of funds as a strong indicator of precisely who the real clients were and a significant factor in determining who ought to have access to the legal advice." 131 S. Ct at 2323 (quotation marks omitted). *Jicarella* held the fact that the government paid its lawyers with its own funds "confirms our view that the Government seeks legal advice in its sovereign capacity rather than as a conventional fiduciary of the Tribe." *Id. See also*, *In re JP Morgan Cash Balance Litig.*, 2007 WL 1280623, at *3 (S.D.N.Y. Apr. 30, 2007), *adhered to on reconsideration* (May 21, 2007) ("In the case at bar, the attorneys were paid entirely by the Plan Sponsor and its predecessor entities; this is 'a significant factor' in deciding whether the Plan Sponsor was the real client." [*quotin Riggs*]).

First Unum was not, and is not, a *trustee* of any assets held in trust for plaintiff or other participants in the benefit plan at issue here. Rather, First Unum's assets belong to it, and plaintiff does not have any title to them until a benefit is paid to her. The attorneys who rendered legal advice to First Unum are paid salaries with corporate assets. Moreover, First Unum, like all insurance companies, is subject to myriad laws, rules and regulations beyond the terms of the Plan at issue in this case. Consulting with counsel on legal issues arising during claim administration is vital to remaining in compliance with those laws, rules and regulations.

Plaintiff's argument is premised on disregarding the fundamental difference between a trustee using beneficiary funds to obtain legal advice relating to the trust, and an insurance company relying on self-paid attorneys to ensure legal compliance. There is no basis to hold that the fiduciary exception to the attorney-client privilege applies to these documents.

Finally, at the end of her letter, plaintiff cites to regulations that were issued earlier this week, and which do not take effect until *2018*. They are irrelevant, though the full Administrative Record will show that First Unum certainly maintained an ongoing, good faith exchange of information with plaintiff.

                                              Respectfully submitted,

                                              S/Patrick W. Begos