USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/6/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

CHERYLLE MCFARLANE,

                                 Plaintiff,

       -against-

FIRST UNUM LIFE INSURANCE COMPANY,

                                Defendant.

-------------------------------------------------------------X

**OPINION AND ORDER**

16-CV-07806 (RA) (KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Cherylle McFarlane brought this action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") seeking to recover long-term disability benefits ("LTD benefits") pursuant to a group long-term disability insurance policy (the "LTD Policy" or "LTD Plan") issued by Defendant First Unum Life Insurance Company ("First Unum").

      Before the Court is Plaintiff's motion seeking (i) an in camera review of certain documents listed on First Unum's privilege log; and (ii) an order compelling production of the same if the Court finds that the documents are subject to the fiduciary exception to the attorney-client privilege and/or that the work product doctrine is inapplicable. (Docket No. 20.)

**Background**

      Plaintiff was an employee of Independence Care Systems ("Independence"), which offered its employees LTD benefits through a LTD Policy issued by First Unum. Independence is

1

named as the LTD Plan Administrator[1]; however, it delegated to First Unum the authority to make decisions on benefit claims and appeals. First Unum initially granted Plaintiff's claim for LTD benefits, but later made the decision to stop paying those benefits because it concluded that Plaintiff was no longer disabled within the meaning of the LTD Plan and, therefore, no longer qualified for benefits. Plaintiff then appealed that decision. First Unum also was responsible for determining the appeal. There is no dispute that First Unum is a fiduciary for the LTD Plan participants and beneficiaries when it decides benefit claims and appeals[2] and that, as a fiduciary, First Unum is required to act in the participants' and beneficiaries' best interests when carrying out these duties.

Consistent with its delegated authority, First Unum maintains the administrative record of benefit claims and appeals. When producing the administrative record in this case, First Unum also provided Plaintiff with a privilege log containing the three entries that are the subject of this motion, namely:

- Bates Nos. FUL-CL-LTD 001328-1329
- Bates No. FUL-CL-LTD 001348
- Bates No. FUL-CL-LTD 001417[3]

---

[1] A Plan Administrator is responsible for managing the affairs and decisions of a benefits plan, which may include, *inter alia*, rendering benefit claim decisions.

[2] First Unum acknowledged this in the discovery conference held on January 23, 2017, consistent with applicable law. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 220 (2004); *Joyner v. Continental Cas. Co.*, 837 F. Supp. 2d 233, 239 (S.D.N.Y. 2011) (insurer with responsibility for evaluating and reviewing benefit claims for ERISA-governed long-term disability benefits plan was "fiduciary" for ERISA purposes).

[3] The privilege log annexed to Plaintiff's motion to compel lists five documents. During the court conference, Plaintiff clarified that he is only seeking production of the communications that occurred between July 15, 2016 and August 19, 2016.

All three entries relate to communications between Katie Doherty, Lead Appeals Specialist at First Unum, and in-house attorneys from First Unum. There is no dispute that Ms. Doherty has the responsibility for determining benefit appeals and, in fact, considered Plaintiff's appeal. The communications between Ms. Doherty and First Unum's attorneys occurred between July 15, 2016 and August 29, 2016, a period when Plaintiff's appeal of the discontinuance of her LTD benefits was pending.

Plaintiff contends that the communications are subject to the fiduciary exception to the attorney-client privilege and not protected by the work product doctrine and, therefore, must be disclosed. First Unum argues that the fiduciary exception does not apply to insurance companies acting as benefit claims administrators and that the communications were had in anticipation of litigation.

**Discussion**

I.     ***Attorney-Client Privilege***

The attorney-client privilege protects communications between a client and its attorney from disclosure to others when the purpose of the communication is to obtain or provide confidential legal advice. *See Fisher v. United States*, 425 U.S. 391, 403 (1976); *United States v. Constr. Prods. Res., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). One exception to the privilege that has been applied in ERISA cases is the fiduciary exception. Under this exception, when legal advice is given to a client who is a fiduciary and concerns the exercise of fiduciary duties, the legal advice is subject to disclosure to the beneficiary.

The U.S. Court of Appeals for the Second Circuit first recognized the fiduciary exception in the ERISA context in *In re Long Island Lighting Co.,* 129 F.3d 268, 270-73 (2d Cir. 1997).

Recently, Justice Sotomayor noted that the exception is "now well recognized in the jurisprudence of both federal and state courts, and has been applied in a wide variety of contexts, including in . . . ERISA enforcement actions." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 190 (2011) (Sotomayor, J., dissenting).

Courts have articulated two rationales for application of the fiduciary exception to the attorney-client privilege in ERISA cases. The first rationale is that the purpose of legal advice concerning fiduciary functions is to serve the beneficiary's best interests and, as such, the beneficiary is viewed as the ultimate client of the lawyer providing the advice. *See Anderson v. Sotheby's Inc. Severance Plan*, No. 04-cv-8180 (SAS)(DFE), 2005 WL 6567123, at *9 (S.D.N.Y. May 13, 2005) (citations omitted). The second rationale is that an ERISA fiduciary has a duty to disclose full and accurate information to the beneficiary about plan administration. *See In re Long Island Lighting Co.*, 129 F.3d at 271-72; *Anderson*, 2005 WL 6567123, at *9-10. Under Second Circuit law, the applicability of the privilege turns on whether the communication concerned a fiduciary obligation to the beneficiary. *In re Long Island Lighting Co.*, 129 F.3d at 271. Legal advice concerning non-fiduciary matters remains privileged and is not subject to the fiduciary exception. *See id.* at 272-73*; see also Asuncion v. Metropolitan Life Ins. Co.*, 493 F. Supp. 2d 716, 720 (S.D.N.Y. 2007).

Under the Second Circuit's standard for application of the exception, a court must "engage in a 'fact-specific inquiry,' examining both the content and the context of the specific communication." *Asuncion*, 493 F. Supp. 2d at 720 (*citing Black v. Bowes*, No. 05-cv-108 (GEL), 2006 WL 3771097, at *2-3 (S.D.N.Y. Dec. 21, 2006)). Whether a communication was made

4

before or after a benefit decision is a key consideration in determining whether the communication concerned the exercise of fiduciary functions. *Id.* at 720-21. If the communication occurred during the pendency of a benefit claim and not after a decision denying benefits, it more likely concerns administration of the benefit claim. *Id.*

First Unum argues that applying the fiduciary exception to an insurer is an unprecedented extension of the law. It cites to a Third Circuit opinion, *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 234 (3d Cir. 2007), in which the court rejected application of the exception to an insurer because, among other reasons, neither the beneficiary nor the benefit plan paid for the legal advice. First Unum also contends that *Jicarilla Apache Nation*, 546 U.S 162, supports its position. In opposition, Plaintiff argues that the rationales for applying the fiduciary exception apply equally to all fiduciaries, including an insurer that is acting as a fiduciary for purposes of benefit claims and appeals. She cites to *In re Long Island Lighting Co.*, as well as cases from outside the Second Circuit in support of this position. *See Stephan v. Unum Life Ins. Co. of Am.,* 697 F.3d 917 (9th Cir. 2012)*; Krase v. Life Ins. Co. of N. Am.*, 962 F. Supp. 2d 1033 (N.D. Ill. 2013); *Harvey v. Standard Ins. Co.*, 275 F.R.D. 629 (N.D. Ala. 2011); *Coffman v. Metropolitan Life Ins. Co.*, 204 F.R.D. 296 (S.D. W. Va. 2001).

In *Wachtel*, the court drew a distinction between insurance companies that act as benefit claim fiduciaries and fiduciaries who are employed by the Company sponsoring the benefit plan and/or paid out of assets of a trust. 482 F.3d at 234-36. In the view of the Third Circuit, the first rationale for application of the fiduciary exception—that the beneficiary is the "true client" for whom the legal advice is intended—does not apply when an insurance

5

company seeks legal advice in the performance of a fiduciary function. *Id.* The court reasoned that:

- In situations when the fiduciary exception is traditionally applied, the fiduciary is managing assets over which it lacks ownership rights. *Id.* at 234. The Third Circuit noted that insurance companies acting as benefit claim fiduciaries own the funds that will paid out under an insurance policy and have an interest in the management of their own assets even while engaging in fiduciary acts. *Id.* at 234-35.
- When an insurance company determines benefit claims and pays those benefits under insurance policies it has issued, a structural conflict of interest exists and, therefore, the beneficiary's ability to argue that it is the "true client" of the legal advice is diminished. *Id.*
- Insurance companies offer many insurance plans and "even while acting as a loyal fiduciary to the beneficiaries of one plan, [they] must be mindful of the duties [owed] to beneficiaries of other customer plans, all of whom are paid from the same pool of assets." *Id.* at 235.
- The legal advice provided to an insurance company fiduciary is paid for by the insurer, not from the assets of a trust. *Id.* at 235-36.

The Third Circuit also concluded that an insurance company fiduciary does not owe the same duty of disclosure concerning plan administration as does a fiduciary employed by the benefit plan sponsor. *Id.* at 236-37. Thus, it found that the second rationale supporting application of the fiduciary exception did not apply. In reaching this conclusion, the court in

*Wachtel* expressly rejected what it characterized as the Second Circuit's "broad language" suggesting that every ERISA fiduciary has an obligation to disclose counsel's statements to its beneficiaries concerning plan administration. *Id.* at 236 (citing *In re Long Island Lighting Co.*, 129 F.3d at 271-72 ("[a]n ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan")).

Finally, the Third Circuit indicated that (i) it did not wish to clarify the law as to the extent of an insurance company's fiduciary obligations to a beneficiary in connection with a discovery dispute; and (ii) application of the fiduciary exception to insurance company fiduciaries might cause insurers to cease providing insurance, increase their charges to reflect the risk that they may lose their ability to confidentially obtain legal advice, or decline to fully inform their attorneys of facts relevant to a benefit claim decision. *Id.* at 237.

For all these reasons, the Third Circuit found that an insurance company's interests diverged sufficiently from those of the beneficiaries of the benefit plan it administers that the justifications for the fiduciary exception do not outweigh the strong policy underlying the attorney-client privilege. *Id.* at 234-38. This Court does not agree with the Third Circuit's decision in *Wachtel* and finds no reasonable basis for applying the fiduciary exception to some, but not all, ERISA fiduciaries who are making decisions on benefit claims and appeals. Further, although no court within the Second Circuit appears to have specifically addressed the issue raised by First Unum, the Second Circuit has clearly stated that the purpose of the communication is the dispositive factor in determining applicability of the privilege or the fiduciary exception to the privilege. *See In re Long Island Lighting Co.*, 129 F.3d at 271-72; *see*

7

*also Black*, 2006 WL 3771097, at *2 ("courts agree that the applicability of the [fiduciary] exception depends on the purpose of the communication"). Under the reasoning in *In re Long Island Lighting Co.*, if the legal advice concerns the exercise of fiduciary duties, then the beneficiary/claimant would be the "true client," because the fiduciary must make benefit claim and appeal determinations in the best interests of the participant, consistent with plan terms. *See In re Long Island Lighting Co.*, 129 F.3d at 271-72. The employer of the benefit claim fiduciary and the source of payment of the attorneys' fees is irrelevant under the Second Circuit's test. In sum, under Second Circuit law, if the communications at issue concern the exercise of First Unum's fiduciary duties, then the plan participant or beneficiary is viewed as the "true client" of the advice. Additionally, as noted above, under Second Circuit law, all fiduciaries, regardless of whether they are insurers, have an obligation to provide full and accurate information to plan beneficiaries regarding administration of the plan. *Id.* at 271; *Asuncion*, 493 F. Supp. 2d at 720. This Court must follow Second Circuit, not Third Circuit, law.

Furthermore, First Unum's contention that no court in the Second Circuit has applied the exception to an insurer is incorrect. In *Asuncion*, 493 F. Supp. 2d at 718-22, which involved the denial of long-term disability benefits just as this case does, the court applied the fiduciary exception to the defendant insurance company that made the decision to deny the plaintiff's benefit claim. Thus, under Second Circuit law, the fiduciary exception applies to ERISA insurance company fiduciaries when the purpose of the advice concerns exercise of fiduciary duties in the administration of a benefit plan.

8

*Jicarilla Apache Nation*, 564 U.S. 162, cited by First Unum, does not change the outcome, as that case is clearly distinguishable because it did not concern the administration of an ERISA benefit plan. *Jicarilla Apache Nation* involved a dispute between the Jicarilla Apache Nation (the "Tribe") and the U.S. Government regarding the Government's alleged mismanagement of a trust fund established for the benefit of the Tribe and funded by proceeds from the development of natural resources from the Tribe's reservation. *Id.* at 166. During discovery, the Tribe sought production of certain privileged communications relating to the management of the trust, which it contended fell within the fiduciary exception to the attorney-client privilege. *Id.* at 167. The Supreme Court cited a number of reasons for declining to apply the exception, including that: (i) the trust relationship between the Government and the Tribe was not a private relationship, but rather one established and proscribed by statute, *id.* at 173-74; (ii) the Government had distinctly separate and potentially competing sovereign interests for which it needed to seek legal advice and, thus, the theory that the Tribe was the "real client" of the Government did not squarely apply, *id.* at 181-82; (iii) the Government does not have the same common law disclosure obligations as a private trustee and, thus, common-law principles are not applicable, *id.* at 183-86; and (iv) the Government attorney was paid from a source other than the trust. *Id.* at 179.

Although, as First Unum points out, the Supreme Court considered the source of the funding for the legal advice, that was only one of several considerations underpinning its decision in *Jicarilla Apache Nation*. Also critical to the Court's holding was that the two rationales supporting application of the exception in the ERISA context—that is, the

9

determination of who is the "real client" and the scope of the fiduciary's disclosure obligations—were not applicable to the trust relationship between the Government and the Tribe. *Id.* at 178-86. *Jicarilla Apache Nation* thus recognized the validity of the two rationales for application of the exception to ERISA fiduciaries. Accordingly, *Jicarilla Apache Nation*, if anything, undermines First Unum's argument and bolster's Plaintiff's request for in camera review.

Accordingly, this Court concludes that the fiduciary exception applies to insurers in ERISA cases. However, in accordance with Second Circuit law, the application of the exception turns on whether the legal advice concerns a fiduciary function. The exception would not apply to legal advice on non-fiduciary functions.

II. **<u>Attorney Work Product Doctrine</u>**

On its privilege log, First Unum also categorized the documents in question as protected by the work product doctrine. It did not, however, focus on this doctrine in its submission to this Court or during the discovery conference concerning Plaintiff's motion to compel.

The attorney work product doctrine protects from disclosure communications and documents prepared in anticipation of litigation unless the party seeking disclosure demonstrates substantial need for the information and that it cannot obtain the substantial equivalent of the information without undue hardship. Fed. R. Civ. P. 26(b)(3)(A); *see also Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). When a document is prepared for multiple purposes—for example, to serve business and litigation purposes—the court must determine whether "in light of the nature of the document and the factual situation of the particular case,

the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original).

In *Anderson*, 2005 WL 6567123, at *8-9, the court considered application of the work product doctrine in connection with an ERISA benefit claim litigation. It found that certain documents that the defendant sought to protect from disclosure were documents that would have been created in the ordinary course of assessing the employee's benefit claim and, thus, were not prepared because of prospective litigation. *Id.* at *9. Accordingly, the court held that the work product doctrine largely did not protect the documents from disclosure. *Id.* In so finding, the court also noted that in the ERISA benefit claim context, "'no ERISA plan beneficiary could ever obtain discovery into records of an Administrator's investigations of the claim' [if the work product doctrine applied] because an administrator could almost always claim that it anticipated possible litigation" if it appeared that the claim would be denied. *Id.*

In the ERISA context, courts also have held that advice rendered in connection with benefit claim administration and prior to a decision on a benefit claim or appeal is not prepared in anticipation of litigation because litigation generally cannot be anticipated prior to determination of a benefit claim. *Asuncion*, 493 F. Supp. 2d at 722. At the same time, at least one court in the Southern District of New York has recognized that an in camera review might be needed to determine whether the communications pertained "not just to the upcoming benefits determination, but [also] to pending or imminent litigation." *Black*, 2006 WL 3771097, at *4. *See also Harvey*, 275 F.R.D. at 636 (finding that communications between insurer and its attorney during pendency of ERISA benefit claim was not prepared in anticipation of litigation

11

and concerned only the administrative review of the claim). In short, while it is possible that the work product doctrine might protect attorney-client communications and documents prepared by a fiduciary's attorney during the pendency of a benefit claim or appeal, if the communications and documents were not because of prospective litigation, they will not be protected by the work product doctrine.

III.    *In Camera Review*

First Unum argues that this Court should not conduct an in camera review of the documents on its privilege log that Plaintiff claims are subject to the fiduciary exception and/or not protected by the work product doctrine. In *United States v. Zolin*, 491 U.S. 554, 563-64 (1989), the Supreme Court held that an in camera review may be used to determine whether allegedly privileged attorney-client communications fall within crime-fraud exception, but that before the district court may engage in in camera review, the party seeking disclosure must present evidence sufficient to support a reasonable belief that in camera review may yield evidence establishing the applicability of the exception. Once this threshold showing is made, the decision whether to conduct in camera review rests in the sound discretion of the court. *Id.* at 572.

Here, Plaintiff has presented undisputed evidence that in camera review may yield evidence establishing the applicability of the fiduciary exception to the attorney-client privilege, including that:

- First Unum was a fiduciary with respect to benefit claim administration;

- The communications at issue were between an individual responsible for determining Plaintiff's appeal of the discontinuance of her LTD benefits and a lawyer; and

- The communications took place during the pendency of Plaintiff's appeal from the denial of her request for continued benefits.

In sum, it is quite possible that the purpose of the communications at issue concerned exercise of fiduciary duties. Additionally, an in camera review is needed to determine if the documents in question were created because of prospective litigation and thus protected by the attorney work product doctrine. For these reasons, Plaintiff's request for an in camera review of the three documents on First Unum's privilege log noted above is GRANTED.

First Unum shall provide the Court with unredacted copies of the communications by no later than February 10, 2017 for an in camera review or, alternatively, if, based on this decision, First Unum determines that the communications are subject to the fiduciary exception and not protected by the work product doctrine, it shall provide the documents to Plaintiff by February 10, 2017.

**SO ORDERED.**

Dated: February 6, 2017
New York, New York

*Katharine H Parker*
_____
KATHARINE H. PARKER
United States Magistrate Judge