USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 08/15/2017

CHERYLLE MCFARLANE,

                Plaintiff,

      v.

FIRST UNUM LIFE INSURANCE
COMPANY,

                Defendant.

No. 16-CV-7806 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Cherylle McFarlane brings this action against Defendant First Unum Life Insurance Co. ("First Unum") to recover disability benefits under the Employment Retirement Income Security Act of 1974 ("ERISA"). First Unum moves to dismiss McFarlane's complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, First Unum's motion is granted in part and denied in part.

## BACKGROUND[1]

Cherylle McFarlane is a former assistant nursing director at Independence Care Systems ("Independence Care"). *See* Compl. Ex. 1 ("Appeal Letter") at 4 (Dkt. 1-1). First Unum issued a group disability policy to Independence Care, through which McFarlane received disability benefits. Compl. ¶ 3; Appeal Letter at 1. McFarlane alleges that First Unum is a "fiduciary under

---

[1] Unless otherwise noted, these facts are drawn from McFarlane's complaint and certain records of her administrative appeal, which are attached to the complaint and "explicitly incorporated by reference." Compl. ¶ 16 (Dkt. 1); *see Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 97 n.13 (2d Cir. 2017) ("For the purpose of a motion to dismiss under Rule 12(b)(6), 'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002))).

the Policy" and "exercised authority and control over the payment of benefits." Compl. ¶ 15.

On April 28, 2014, Dr. Farzin Sehati diagnosed McFarlane with fibromyalgia, a disorder related to the central nervous system and characterized by widespread pain and fatigue. *See* Appeal Letter at 5. Dr. Sehati determined that, as a result of her fibromyalgia, McFarlane experienced pain in her neck, back, knees, and shoulders. *See id.* Dr. Sehati also noted that numerous treatments had failed to provide McFarlane relief. *See id.* Dr. Sehati advised McFarlane to stop working by May 5, 2014. *See id.* On May 2, 2014, McFarlane stopped working. *See id.* at 4.

On December 15, 2014, a First Unum representative approved McFarlane's long-term disability benefits. *See id.* at 8. In a letter approving McFarlane's benefits, First Unum stated: "We approved your benefits because you are unable to perform the material and substantial duties of your occupation as an Assistant Nursing Director of Care Management due to the symptoms related to your medical conditions of chronic fatigue syndrome and fibromyalgia." *Id.* The letter added that "it is unclear if your condition will improve to allow for a transition back to work. We will need additional medical information to understand if your current treatment plan will result in any improvement." *Id.* According to McFarlane, no functional or medical information subsequently showed that her chronic fatigue syndrome or fibromyalgia had "changed, let alone improved." *Id.*

In a letter dated January 14, 2016, First Unum terminated McFarlane's long-term disability benefits. *Id.* at 9. First Unum's letter explained that McFarlane's conditions were disabling for a period of eighteen months. *See id.* at 9, 11. Apparently because that period had passed, First Unum determined that McFarlane had become able to resume the material and substantial duties of her occupation. *See id.* at 9.

On July 7, 2016, McFarlane submitted an appeal to the Unum Benefits Center. *See id.* at

1.  On August 22, 2016, McFarlane notified First Unum that it had not rendered a decision within 45 days, as required by 29 C.F.R. § 2560.503–1(i)(3)(i).  *See* Compl. ¶ 17.  Later that day, First Unum faxed a letter to McFarlane's counsel, which stated that it needed "an extension of up to 45 days to complete [its] review" because it had "not received necessary information from Dr. Villanella that [it] previously requested."  Decl. of Patrick W. Begos in Supp. of Mot. to Dismiss ("Begos Decl.") Ex. A at 1408 (Dkt. 12).[2]  The letter further stated that "[t]his extension will begin when [First Unum] receive[s] the requested information."  *Id.*  First Unum never rendered a decision on McFarlane's administrative appeal.  *See* Compl. ¶ 21.

On October 6, 2016, McFarlane filed this action.  McFarlane asserted claims for long-term disability benefits and for statutory penalties.  *See id.* ¶¶ 23–35.  On November 1, 2016, First Unum filed a motion to dismiss.  *See* Def.'s Mot. to Dismiss (Dkt. 11).  On December 15, 2016, McFarlane filed an opposition brief, *see* Pl.'s Opp'n Br. (Dkt. 18), to which First Unum replied on January 13, 2017, *see* Def.'s Reply Br. (Dkt. 26).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

---

[2] According to McFarlane's administrative appeal, Dr. Villanella is a licensed psychologist who performed a comprehensive neuropsychological evaluation of her condition.  *See* Appeal Letter at 24.

plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but rather "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (internal quotation marks omitted). In answering this question, the Court must "accept[] plaintiffs' plausible allegations as true and draw[] all reasonable inferences in their favor." *Fernandez v. Zoni Language Ctrs., Inc.*, 858 F.3d 45, 48 (2d Cir. 2017).

"For the purpose of a motion to dismiss under Rule 12(b)(6), 'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 97 n.13 (2d Cir. 2017) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

## DISCUSSION

### A. Long-Term Disability Benefits Claim

First Unum argues that McFarlane has not stated a claim for long-term disability benefits under ERISA because she has not exhausted her administrative remedies. *See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 7–10 (Dkt. 13). The Court disagrees.

"[A]n ERISA action may not be brought in federal court until administrative remedies are exhausted." *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 79 (2d Cir. 2009) (per curiam); *see also Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 608 (2013) ("Courts have generally required participants to exhaust the plan's administrative

4

remedies before filing suit to recover benefits."); *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2002) ("We require exhaustion of benefit claims brought under ERISA."). "ERISA itself does not contain an exhaustion requirement; the requirement is instead judge-made." *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 179 (2d Cir. 2013). "Among other things, administrative exhaustion is a 'safeguard that encourages employers and others to undertake the voluntary step of providing medical and retirement benefits to plan participants." *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 55 (2d Cir. 2016) (alterations omitted) (quoting *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 259 (2008) (Roberts, C.J., concurring)). Although the failure to exhaust administrative remedies is an affirmative defense, *see Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006), "courts routinely dismiss ERISA claims brought under Section 502(a)(1)(B) on a 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies," *Abe v. New York Univ.*, No. 14-CV-9323 (RJS), 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016). *See, e.g.*, *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 292 (E.D.N.Y. 2014); *Kesselman v. Rawlings Co., LLC*, 668 F. Supp. 2d 604, 608 (S.D.N.Y. 2009); *Am. Medical Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 450 (S.D.N.Y. 2008); *Egan v. Marsh & McLennan Cos., Inc.*, 2008 WL 245511, at *10 (S.D.N.Y. Jan. 28, 2008).

Under the Department of Labor's claims-procedure regulation, however, a claimant "shall be deemed to have exhausted" her administrative remedies if a plan fails to establish or follow claims procedures in compliance with ERISA. *See* 29 C.F.R. § 2560.503–1(*l*)(1). "The 'deemed exhausted' provision was plainly designed to give claimants faced with inadequate claims procedures a fast track into court." *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 222 (2d Cir. 2006). In applying this provision, the Second Circuit has "reject[ed] the idea that [a] small measure

of conformity to the regulatory requirements . . . can block or delay a plaintiff['s] right to sue." *Id.* at 223; *cf. Halo*, 819 F.3d at 45 ("[W]hen denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the regulation in the processing of a particular claim was inadvertent *and* harmless." (emphasis in original) (citation omitted)).

In this case, McFarlane argues that she is "deemed to have exhausted" her administrative remedies because First Unum did not decide her administrative appeal within the time periods prescribed by the claims-procedure regulation. 29 C.F.R. § 2560.503–1(*l*)(1). Specifically, under 29 C.F.R. § 2560.503–1(i), a plan must notify the claimant of its benefit determination on review "within a reasonable period of time, but not later than [45] days after receipt of the claimant's request for review by the plan." 29 C.F.R. § 2560.503–1(i)(1)(i).[3] The plan may, however, take one extension, not to exceed 45 days, if it determines that "special circumstances" such as "the need to hold a hearing," require additional time for processing the claim. *Id.*; *see also Heimeshoff*, 134 S. Ct. at 613 ("The plan has 45 days to resolve [an] appeal, with one 45–day extension available for 'special circumstances (such as the need to hold a hearing).'" (citing 29 C.F.R. §§ 2560.503–1(i)(1)(i), (i)(3)(i))). In the event that a plan determines that an extension is necessary, "written notice of the extension shall be furnished to the claimant prior to the termination of the

---

[3] Although Subsection 503–1(i)(1)(i) provides that the plan has 60 days to decide an appeal with a 60–day extension available in special circumstances, *see* 29 C.F.R. § 2560.503–1(i)(1)(i), "a period of 45 days shall apply instead of 60 days" where, as here, the claim "involv[es] disability benefits," *id.* § 2560.503–1(i)(3)(i).

initial [45]–day period." 29 C.F.R. § 2560.503–1(i)(1)(i). The extension notice "shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review." *Id.*

There is no dispute that First Unum did not decide McFarlane's appeal within 45 days of receiving her request for review, or at any time thereafter. First Unum argues, however, that it complied with Subsection 503–1(i)(1)(i) by notifying McFarlane that it needed an extension of time to render a decision. In particular, First Unum points to a letter, dated August 19, 2016 and faxed to McFarlane on August 22, 2016, which states in relevant part:

> We will need an extension of up to 45 days to complete our review. We need this extension to obtain outstanding information. . . .
>
> This 45–day extension is required because we have not received necessary information from Dr. Villanella that we previously requested. . . .
>
> This extension will begin when we receive the requested information. When we complete our appeal review, we will send you a decision in writing.

Begos Decl. Ex. A at 1408. This letter, in First Unum's view, constitutes an "extension notice," through which First Unum satisfied its obligations under Subsection 503–1(i)(1)(i). 29 C.F.R. § 2560.503–1(i)(1)(i). The Court disagrees.

Under the plain language of Subsection 503–1(i)(1)(i), an "extension notice" must indicate "the date by which the plan expects to render the determination on review." *Id.* First Unum's letter does not. The term "date" refers to the "day when an event happened or will happen." *Black's Law Dictionary* (10th ed. 2014). And since the regulation uses the definite article "the" to modify "date," it indicates that the plan must provide one specific date, not a range of possible dates. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (explaining that a statute's use of the definite article "indicates that there is generally only one" of the referenced noun); *accord Main*

*St. Legal Servs. v. Nat'l Sec. Council*, 811 F.3d 542, 549 (2d Cir. 2016).  Here, First Unum's letter does not specify a single "day" by which it will render a decision.  *See* 29 C.F.R. § 2560.503–1(i)(1)(i).  Instead, First Unum's letter sets forth a rough timetable: First Unum "need[s]" an extension of "up to 45 days," which will begin when it "receive[s] the requested information" from a third party.  Begos Decl. Ex. A at 1408.  This timetable is far too uncertain to constitute "the date" by which First Unum "expects to render the determination on review" within the meaning of Subsection 503–1(i)(1)(i).  Indeed, the letter does not even state when First Unum expects to "receive the requested information" from a third party, leaving McFarlane to guess when First Unum's "45–day extension" will actually begin.  Begos Decl. Ex. A at 1408.  And without notifying McFarlane of the date on which its extension will *begin*, First Unum has plainly failed to provide her "the date" on which its extension will end—it could decide her claim in 45 days or 45 months, depending on when it receives information from a third party beyond McFarlane's control.  Therefore, because First Unum's letter does not comply with Subsection 503-1(i)(1)(i)'s requirement that a plan indicate "the date by which [it] expects to render the determination on review," it does not qualify as a valid "extension notice" under the regulation.  29 C.F.R. § 2560.503–1(i)(1)(i).[4]

First Unum appears to argue, however, that it is not required to specify "the date" for rendering a decision because its time to resolve her appeal was tolled pursuant to Subsection 503–1(i)(4).  This Subsection provides, in relevant part:

> In the event that a period of time is extended as permitted pursuant to paragraph (i)(1) . . . of this section due to a claimant's failure to submit information necessary

---

[4] Since the Court concludes that First Unum's letter does not comply with the substantive requirements for notifying a claimant of an extension of time to decide an appeal, it need not address whether the letter, if otherwise in compliance, would have been timely under Subsection 503–1(i).

to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

29 C.F.R. §§ 2560.503–1(i)(4). First Unum contends that its time for making a benefit determination was tolled because, as stated in its letter, it had "not received necessary information from Dr. Villanella that [it] previously requested." Begos Decl. Ex. A at 1408 (Dkt. 12); *see* Def.'s Mem. at 10. But First Unum does not argue that McFarlane herself failed to submit any information necessary to decide her claim. Thus, in First Unum's view, a plan's time to resolve an appeal is tolled under Subsection 503–1(i)(4) when the plan determines that an extension is required because a third party, but not the claimant herself, failed to submit information necessary to decide a claim. This argument is not persuasive.

When interpreting a federal regulation, a court must "examine the regulation's text in light of its purpose, as stated in the regulation's preamble, as well as the purpose of the regulation's authorizing statute." *Halo*, 819 F.3d at 52; *see generally* Kevin M. Stack, *Interpreting Regulations*, 111 Mich. L. Rev. 355 (2012). The Court begins with the text. The language of Subsection 503–1(i)(4) is straightforward: it states that a plan's time to decide an appeal is tolled when the plan has taken an extension "due to a *claimant's* failure to submit information necessary to decide a claim." 29 C.F.R. § 2560.503–1(i)(4) (emphasis added). This provision specifically identifies "the claimant" as the party whose inaction stops the clock. *Id.* It does not state, as First Unum appears to suggest, that tolling is in order when a third party—such as a claimant's physician—has not responded to a plan's requests for information. *See id.* Thus, under a plain reading of the regulation, the failure of a party other than "the claimant" to submit necessary information does not toll a plan's time to decide an appeal. *Id.*

9

The structure and context of Subsection 503–1(i) further support this interpretation. As in when reading a statute, a court may understand the plain meaning of a particular provision in a regulation "by looking to the [regulatory] scheme as a whole and placing the particular provision within the context of that [regulation]." *United States v. Epskamp*, 832 F.3d 154, 162 (2d Cir. 2016) (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012)), *cert. denied*, 137 S. Ct. 1122 (2017). Here, in the sentence immediately preceding the tolling provision, Subsection 503–1(i)(4) provides that "the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed . . . *without regard to whether all the information necessary to make a benefit determination on review accompanies the filing*." 29 C.F.R. § 2560.503–1(i)(4) (emphasis added). Thus, Subsection 503–1(i)(4) plainly contemplates that a plan may be required to decide claims, in at least some circumstances, without all the information it believes it needs to make a benefit determination. *See id.*; *see also McDowell v. Standard Ins. Co.*, 555 F. Supp. 2d 1361, 1369 (N.D. Ga. 2008) ("The Court appreciates that in an ideal world, a disability claim reviewer would have the claimant's complete medical records before him or her when deciding a claim. However, the regulations clearly contemplate that the clock will be running in less than ideal conditions."). Viewed in this context, the tolling provision is a narrow exception: only if a "claimant[]" fails to submit "information necessary to decide a claim" may the plan's time to decide the claim be tolled. 29 C.F.R. § 2560.503–1(i)(4).

In viewing the structure and context of Subsection 503–1(i)(4)'s tolling provision, the Court also finds it significant that the tolling period ends when "*the claimant* responds to the request for additional information." *Id.* (emphasis added). This provision would make little sense if tolling were available when the plan requested information from other parties: in that case, the

10

claimant would have no request to which she could respond, and the provision addressing when tolling ends would be entirely superfluous. *See Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 156 (2d Cir. 2013) ("One of the most basic interpretive canons is that a statute should be construed so that effect is given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant." (alterations omitted) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009))). Read naturally, the text of Subsection 503–1(i)(4) gives "the claimant" the key to re-starting the clock: a tolling period ends under this Subsection when the claimant— and only the claimant—responds to the plan's request for information.[5] Thus, Subsection 503– 1(i)(4)'s specific reference to "the claimant" in establishing when a tolling period ends further suggests that tolling is not available when a third party has failed to submit information requested by the plan.

In addition, other provisions of Subsection 503–1 suggest that its drafters intended to limit the availability of tolling to situations in which the claimant's failure to submit necessary information was the reason for a plan's determination that an extension was required. For example, Subsection 503–1(h)(3)(iii), which addresses the requirements for appeals of adverse benefit determinations in the context of group health plans, specifies that a fiduciary "shall consult with a health care professional who has appropriate training and experience" in deciding certain appeals. 29 C.F.R. § 2560.503–1(h)(3)(iii). Thus, the regulation contemplates that a plan will communicate

---

[5] Indeed, this aspect of Subsection 503–1(i)(4) has been viewed as a critical part of the claims-processing procedure under ERISA, for it vests the claimant with unilateral authority to end a tolling period—and thus to push her appeal forward—by making any "response," even if that response is simply to say that the claimant refuses to provide the requested information. *See, e.g.*, *Holmes v. Colo. Coalition for the Homeless Long Term Disability Plan*, 762 F.3d 1195, 1207 (10th Cir. 2014) ("[The claimant] had the power to end the tolling period and recommence the running of the time for decision simply by responding to [the plan's] request, even if the response was a refusal to provide the documents.").

with third-party physicians as part of its review process in at least some cases. *See id.* Had the Department of Labor intended to permit tolling when a "health care professional"—such as Dr. Villanella—has failed to submit necessary information, it easily could have so stated. *Id.* Instead, Section 503–1(i)(4) identifies the "claimant's" failure to submit necessary information as the event that tolls a plan's time to decide a claim.

The purpose of Subsection 503–1(i) further supports the view that it does not permit tolling unless the claimant herself has failed to provide necessary information. In analyzing the purpose of a federal regulation, the Court begins with its so-called "preamble," in which an agency sets forth a rule's "basis and purpose" pursuant to the Administrative Procedure Act. *Halo*, 819 F.3d at 52 (quoting 5 U.S.C. § 553(c)). The relevant preamble here is found in a November 2000 regulation, in which the Department of Labor substantially revised the procedures for processing claims, including by adding Subsection 503–1(i). *See* 65 Fed. Reg. 70,246, 70,269–70 (Nov. 21, 2000). The preamble explains that that this regulation was "intended to ensure more timely benefit determinations, to improve access to information on which a benefit determination is made, and to assure that participants and beneficiaries will be afforded a full and fair review of denied claims." *Id.* at 70,246. According to the preamble, the Department of Labor believed that the regulation's procedural reforms were "necessary to guarantee procedural rights to benefit claimants," and to "ensure that benefit claimants, at least in ERISA-covered plans, are provided faster, fuller, and fairer decisions on their benefit claims." *Id.* at 70,246–47. While the preamble does not specifically address the tolling provision of Subsection 503–1(i)(4), the regulation's broader purpose strongly suggests that any tolling provision should be construed narrowly, so as to ensure that administrative appeals are processed expeditiously. Furthermore, interpreting Section 503–1(i)(4) to authorize tolling only in the event that the claimant has failed to produce

12

necessary information helps "guarantee procedural rights to benefit claimants": this interpretation ensures that a claimant's appeal is not stalled indefinitely while the plan seeks information from third parties beyond the claimant's control. Indeed, this interpretation promotes the very balance this regulation seeks to strike: it ensures that the process of reviewing denied claims will be "full" and "fair" by requiring the claimant to respond to the plan's requests for information, *see* 29 C.F.R. § 2560.503–1(i)(1)(i), but it also guarantees a "faster" process by requiring the plan to move forward in deciding an appeal when the claimant has so responded, *see id.* § 2560–503(i)(4). Thus, the purpose of Subsection 503–1(i) further suggests a plan's time to resolve an appeal is not tolled when a third party, but not the claimant, has not responded to a plan's request for information.

In light of the text, structure, and purpose of Subsection 503–1, the Court concludes that a plan's time to resolve an appeal is not tolled under 29 C.F.R. § 2560.503–1(i)(4) when the plan determines that an extension is required because a third party, but not the claimant herself, has failed to submit information necessary to decide a claim.[6] Accordingly, the tolling provision of Subsection 503–1(i)(4) does not excuse First Unum's failure to resolve McFarlane's appeal, or to notify her of a specific date by which it would do so, within 45 days of receiving her request for review. McFarlane is therefore "deemed to have exhausted the administrative remedies available

---

[6] The Tenth Circuit's decision in *Holmes v. Colorado Coalition for the Homeless Long Term Disability Plan*, 762 F.3d 1195 (10th Cir. 2014) is not to the contrary. In *Holmes*, the Tenth Circuit held that a plan's time to decide an appeal was tolled when the plan notified the participant that, after it consulted with a third-party physician, it determined that an extension was necessary due to the *participant's* failure to submit a complete set of medical records. *See id.* at 1205. Here, by contrast, First Unum informed McFarlane that an extension was necessary because a third-party physician—not McFarlane—had failed to submit records. The Court also notes that at least one district court in the Tenth Circuit has similarly interpreted Subsection 503–1(i)(4). *See Fitzgerald v. Long-Term Disability Plan of Packard's on the Plaza, Inc.*, No. 11-CV-956 (JEC), 2013 WL 12178732, at *6 (D.N.M. Apr. 4, 2013) ("Once Plaintiff responded to [the plan's] request for information, the tolling period ended and was not renewed upon requests to Plaintiff's doctors for additional information.").

under the plan," and First Unum's motion to dismiss her complaint for failure to exhaust her administrative remedies is denied. 29 C.F.R. § 2560.503–1(*l*)(1).[7]

## B. Failure to Provide Plan Documents

McFarlane next seeks statutory penalties under 29 U.S.C. § 1132(c)(1), based on First Unum's alleged failure to provide copies of her plan documents under 29 U.S.C. § 1024(b)(4). *See* Compl. ¶¶ 30–35. Section 1024(b)(4) requires the administrator to furnish a copy of, *inter alia*, the "latest updated summary plan description" and "other instruments under which the plan is operated or established" upon written request of any participant or beneficiary. 29 U.S.C. § 1024(b)(4) (footnote omitted). Section 1132(c)(1), in turn, provides that any administrator who fails or refuses to comply with this disclosure requirement "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to [$110] a day." *Id.* § 1132(c)(1).[8]

First Unum argues that this claim must be dismissed because McFarlane lacks Article III standing to assert it or, alternatively, because First Unum is not an "administrator" within the meaning of Sections 1024(b)(4) and 1132(c)(1). *See* Def.'s Mem. at 10–15. The Court concludes that McFarlane has standing but agrees that, because she has not plausibly alleged that First Unum is an "administrator," she has not stated a claim for statutory penalties.

---

[7] First Unum does not argue that its failure to comply with the timeliness requirements of Subsection 2560.503–1(i) was inadvertent or harmless. *See Halo*, 819 F.3d at 57–58.

[8] The Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, enacted as part of the Bipartisan Budget Act of 2015, directed federal agencies to adjust their civil monetary penalties for inflation each year. *See* Pub. L. No. 114–74, 129 Stat. 584, 599–60. The Department of Labor has accordingly increased the daily penalty for failure to provide plan information from $100 to $110. *See* 29 C.F.R. § 2575.2(e).

### 1.    Standing

"To satisfy the Constitution's restriction of [a federal court's] jurisdiction to 'Cases' and 'Controversies,' Art. III, § 2, a plaintiff must demonstrate constitutional standing." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1302 (2017). "To establish Article III standing, the plaintiff seeking compensatory relief must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and   (3) that is likely to be redressed by a favorable judicial decision.'" *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S. Ct. at 1547; *accord Montesa v. Schwartz*, 836 F.3d 176, 194 (2d Cir. 2016)). "Each element of standing 'must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation,' and at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'" *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

The parties' dispute here concerns injury in fact—the "'first and foremost' of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (alteration omitted) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560); *accord Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016). "To be 'concrete,' an injury 'must actually exist,' that is, it must be 'real, and not abstract.'" *Strubel*, 842 F.3d at 188 (internal citation omitted) (quoting *Spokeo*, 136 S. Ct. at 1548). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S. Ct.

at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1).  The Second Circuit has "repeatedly described [the injury-in-fact] requirement as a low threshold, which helps to ensure that the plaintiff has a personal stake in the outcome of the controversy."  *John*, 858 F.3d at 736 (internal citations and quotation marks omitted).

McFarlane's alleged failure to obtain copies of benefit plan documents that, under her view of the law, ERISA required First Unum to provide constitutes an injury in fact.  The Supreme Court has recognized that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute."  *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998).  In *Akins*, for example, the Court held that a group of voters' "inability to obtain information" that the Federal Election Campaign Act of 1971 allegedly required a lobbying organization to disclose constituted an injury in fact, where there was "no reason to doubt" that this information would help the voters "evaluate candidates for public office."  *Id.* at 21.  Similarly*,* in *Public Citizen v. Department of Justice*, 491 U.S. 440 (1989), the Court held that the inability of two advocacy organizations to obtain information regarding the selection of federal judges, which was allegedly subject to disclosure under the Federal Advisory Committee Act, "constitutes a sufficiently distinct injury to provide standing to sue," where the information would permit the organizations to "participate more effectively in the judicial selection process."  *Id.* at 449.  Under these precedents, a plaintiff suffers a sufficiently concrete injury to confer Article III standing when she is denied access to information that, in the plaintiff's view, must be disclosed pursuant to a statute and when there is "no reason to doubt" that the information would help the plaintiff within the meaning of the statute.  *Akins*, 524 U.S. at 21; *see, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–374 (1982) (holding that the denial of information relating to housing availability satisfied the injury-in-fact requirement); *Dreher v. Experian Info. Sols., Inc.*,

856 F.3d 337, 345 (4th Cir. 2017) ("An 'informational injury' is a type of intangible injury that can constitute an Article III injury in fact." (citing *Akins*, 524 U.S. at 24)); *Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 22 (D.C. Cir. 2011) ("[A] denial of access to information can work an 'injury in fact' for standing purposes, at least where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt their claim that the information would help them." (some internal quotation marks omitted)); *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 545–46 (6th Cir. 2004); *see generally* 15 James W. Moore et al., *Moore's Federal Practice* § 101.40 (3d ed. 2015) ("A plaintiff may be injured by a defendant's failure or refusal to disclose information that it is required by law to disclose and the disclosure of which would be helpful to the plaintiff.").

In this case, McFarlane's alleged inability to obtain her benefit plan documents satisfies the injury-in-fact requirement. McFarlane alleges that she "fail[ed] to obtain information" that, under her reading of Section 1024(b)(4), she was entitled to receive. *Akins*, 524 U.S. at 21; *see also Am. Soc. for Prevention of Cruelty to Animals*, 659 F.3d at 23 (explaining that, to establish an informational injury, "a plaintiff must espouse a view of the law under which the defendant . . . is obligated to disclose certain information that the plaintiff has a right to obtain"). Furthermore, there is "no reason to doubt" that the plan documents would help McFarlane, particularly in understanding and protecting her rights to disability benefits. *Akins*, 524 U.S. at 21. Indeed, the Supreme Court has recognized that the purpose of ERISA's disclosure requirements is to "ensure[] that 'the individual participant knows exactly where he stands with respect to the plan.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (quoting H.R. Rep. 93–533, at 11 (1973)); *see also Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 793 (7th Cir. 2009) (discussing the purposes of Section 1024(b)(4)). Here, McFarlane claims that she does not "know exactly where

[s]he stands with respect to the plan" because First Unum has refused to provide the documents governing her rights and responsibilities under the plan. *Firestone Tire & Rubber Co.*, 489 U.S. at 118 (citation omitted). And on the basis of McFarlane's claim that First Unum "refused" to produce plan documents "[d]espite repeated oral and written requests," Appeal Letter at 1, the Court may reasonably infer that First Unum's non-disclosure of plan documents has frustrated McFarlane's efforts to challenge the termination of her long-term disability benefits. Thus, McFarlane's failure to obtain benefit plan documents, which she claims First Unum was required to disclose and which would allegedly help her protect her rights to disability benefits, constitutes a sufficiently "concrete" injury to confer Article III standing.

First Unum argues the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1547 (2016) compels a contrary conclusion. The Court disagrees. In *Spokeo*, the Supreme Court held that a plaintiff could not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." 136 S. Ct. at 1549. The Court explained, however, that "'[c]oncrete' is not . . . necessarily synonymous with 'tangible,'" and that "intangible injuries can nevertheless be concrete." *Id.* In addition, the Court reaffirmed that the violation of a procedural right guaranteed by statute may constitute a sufficiently "concrete" injury even without an allegation of "any *additional* harm beyond the one Congress has identified." *Id.* (emphasis in original). And as two specific illustrations of this principle, the Court cited *Akins* and *Public Citizen*—the leading cases on informational injury, *see Moore's Federal Practice* § 101.40, and those that most strongly support McFarlane's standing to sue for statutory penalties here. *See id.* at 1549–50. While *Spokeo* may have clarified certain principles regarding the "concreteness" requirement of an injury in fact, it did not disturb the long-standing principle, invoked by McFarlane here, that a plaintiff suffers an injury in fact when she is denied access to

helpful information subject to disclosure under a statute.  *See id.*[9]

First Unum is also incorrect to equate its alleged violation of ERISA's disclosure provisions with a "bare procedural violation."  *Spokeo*, 136 S. Ct. at 1549.  As the Supreme Court has explained, "reporting, disclosure, and recordkeeping are central to, and an essential part of, the uniform system of plan administration contemplated by ERISA."  *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 945 (2016).  When it enacted ERISA, Congress specifically stated that "requiring the disclosure and reporting to participants and beneficiaries of financial and other information" with respect to benefit plans was intended to "protect . . . the interests of participants in employee benefit plans and their beneficiaries."  29 U.S.C. § 1001(b).  Thus, ERISA does not mandate disclosure for disclosure's sake.  Rather, it requires the disclosure of requested plan information to ensure that a participant or beneficiary is able to protect her concrete interests in employee benefits.  And here, those interests have allegedly been harmed: McFarlane lost her long-term disability benefits and claims that she has been unable to reclaim them without her plan documents.  *See* Compl. ¶ 35; Appeal Letter at 1–4, 9.  Under *Spokeo*, McFarlane does not allege a "bare procedural violation," but rather a sufficiently "concrete harm" to satisfy the injury-in-fact requirement.  *Spokeo*, 136 S. Ct. at 1549; *see Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) (holding that, under *Spokeo*, the violation of disclosure provisions of the Truth in Lending Act qualified as a "concrete" injury, as the disclosure requirements "do not operate in a

---

[9] In general, "[l]ower-court cases have read *Spokeo* to reiterate, not rework, principles of standing." *Gambles v. Sterling Infosystems, Inc.*, No. 15-CV-9746 (PAE), 2017 WL 589130, at *7 n.14 (S.D.N.Y. Feb. 13, 2017); *see, e.g.*, *Lyshe v. Levy*, 854 F.3d 855, 861 (6th Cir. 2017) ("*Spokeo* clarified, rather than altered, our standing jurisprudence . . . ."); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273 (3d Cir. 2016) (holding that *Spokeo* "does not alter our prior analysis" of standing doctrine), *cert. denied sub nom. C.A.F. v. Viacom Inc.*, 137 S. Ct. 624, 516 (2017).

vacuum," but rather "serve[] to protect a consumer's concrete interest in 'avoiding the uninformed use of credit,' a core object of the [statute]" (quoting 15 U.S.C. § 1601(a))).[10]

McFarlane has satisfied the remaining elements of the injury-in-fact requirement. Her alleged injury is "particularized," in that it affects her "in a personal and individual way." *Spokeo,* 136 S. Ct. at 1548 (quoting *Lujan,* 504 U.S. at 560 n.1). Indeed, McFarlane alleges that she requested information regarding her plan, and that First Unum denied her requests in violation of Section 1024(b)(4). *See* Appeal Letter at 1. McFarlane has thus alleged a "distinct" injury, *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990), not an "undifferentiated" one that could be asserted by a large number of people, *United States v. Richardson,* 418 U.S. 166, 177 (1974). McFarlane has also adequately alleged that her injury is "actual or imminent, not conjectural or hypothetical." *Spokeo,* 136 S. Ct. at 1548 (quoting *Lujan,* 504 U.S. at 560). According to McFarlane, First Unum has already denied her request for a copy of her plan, and her benefits have already been terminated. *See* Appeal Letter at 1, 9. Thus, rather than alleging a "some day" injury, *Lujan,* 504 U.S. at 564, McFarlane seeks relief for an injury that she has already suffered. Accordingly, McFarlane has adequately alleged that she suffered an injury in fact.

McFarlane has also satisfied the "causation" and "redressability" requirements of Article

---

[10] The Fifth Circuit's decision in *Lee v. Verizon Communications, Inc.*, 837 F.3d 523, 529 (5th Cir. 2016), *cert. denied sub nom. Pundt v. Verizon Commc'ns, Inc.*, 137 S. Ct. 1374 (2017), is not to the contrary. In *Lee,* the Fifth Circuit determined that a "bare allegation of improper defined-benefit-plan management under ERISA, without concomitant allegations that any defined benefit plans are even at risk, does not meet the dictates of Article III." *Id.* at 530. *Lee* is inapposite, however, as it did not address alleged violations of ERISA's disclosure requirements and thus did not consider the type of informational injury at issue in this case. The Court notes that, since *Spokeo,* at least two district courts have determined that a participant or beneficiary's failure to obtain requested plan information under Section 1024(b)(4) constitutes an injury in fact. *See Limbach v. Weil Pump Co., Inc.*, No. 15-CV-1531, 2017 WL 1379360, at *3–4 (E.D. Wis. Apr. 14, 2017); *Brooks v. Ga. Pac., LLC*, No. 16-CV-0676, 2017 WL 1534219, at *4–5 (W.D. La. Mar. 21, 2017), *report and recommendation adopted*, No. 2017 WL 1538606 (W.D. La. Apr. 26, 2017).

III standing. Her injury is "fairly traceable to the challenged conduct" of First Unum, *Town of Chester*, 137 S. Ct. at 1650, as she claims that First Unum refused to provide the information she allegedly requested, *see* Appeal Letter at 1. McFarlane has also alleged that her injury "is likely to be redressed by a favorable judicial decision," *Town of Chester*, 137 S. Ct. at 1650 (internal quotation marks omitted), as ERISA authorizes courts to award statutory penalties to plan participants or beneficiaries whose requests for plan information are denied, *see* 29 U.S.C. § 1132(c)(1). Thus, McFarlane has demonstrated that she has Article III standing to pursue her claim for statutory penalties.

### 2.  Failure to State a Claim

Although McFarlane has standing to challenge the alleged failure to provide plan documents, she has not stated a claim for statutory penalties. As discussed above, Section 1024(b)(4) requires "[t]he administrator" to furnish a copy of plan documents upon written request of any participant or beneficiary, 29 U.S.C. § 1024(b)(4), and Section 1132(c) provides that any "administrator" who fails to comply with this disclosure requirement may be personally liable to the participant, *id.* § 1332(c). ERISA defines the term "administrator" as:

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;
>
> (ii) if an administrator is not so designated, the plan sponsor; or
>
> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

*Id.* § 1002(16)(A).[11]  A participant or beneficiary "cannot recover statutory damages" against a

---

[11] The term "plan sponsor" means: "(i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan

defendant who "is not a plan 'administrator'" under ERISA's definition of the term. *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008).

In this case, McFarlane has not plausibly alleged that First Unum is an "administrator" within the meaning of ERISA. Nowhere in her complaint or in her administrative appeal does McFarlane identify First Unum as an "administrator." *See* Compl. McFarlane's allegation that First Unum is "a fiduciary within the meaning of ERISA § 1002(21)," Compl. ¶ 15, is not sufficient. As the Second Circuit has explained, the obligation to furnish plan information pursuant to Section 1024 "is placed on the person designated under ERISA as the 'administrator' of the plan, not on every fiduciary." *Lee v. Burkhart*, 991 F.2d 1004, 1010 (2d Cir. 1993). Moreover, McFarlane provides no allegations plausibly suggesting that First Unum falls within ERISA's definition of this term: she does not allege that the instrument under which her plan is operated designates First Unum as an "administrator," 29 U.S.C. § 1002(16)(A)(i), that First Unum is a "plan sponsor," *id.* § 1002(16)(A)(ii), or that First Unum is otherwise authorized to serve as an administrator under a Department of Labor regulation, *id.* § 1002(16)(A)(iii). And although McFarlane alleges that First Unum "exercised authority and control over the payment of benefits," Compl. ¶ 15, she does not allege that the plan administrator's "*disclosure* duties were delegated" to First Unum. *Lee*, 991 F.2d at 1010 (emphasis added). Because McFarlane has not plausibly alleged that First Unum is an "administrator" under ERISA, her claim for statutory penalties fails as a matter of law. *See, e.g.*, *Krauss*, 517 F.3d at 631; *Lee*, 991 F.2d at 1010 (affirming dismissal

---

established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan." 29 U.S.C. § 1002(16)(B).

of Section 1332(c) claim for statutory penalties where "Plaintiffs do not allege that [their employer] designated [the defendant] as the 'administrator' of the Plan," and "[n]owhere do they allege that [the employer's] disclosure duties were delegated to [the defendant"]); *Pineiro v. Pension Ben. Guar. Corp.*, No. 96-CV-7392 (LAP), 1997 WL 739581, at *16 (S.D.N.Y. Nov. 26, 1997) (dismissing a claim for violations of Section 1024's disclosure obligations, where the plaintiffs "have not alleged that the [the defendant] was 'designated [administrator] by the terms of the instrument under which the plan is operated'" and did not allege that the defendant was the "plan sponsor" (alteration omitted) (quoting 29 U.S.C. § 1002(16(A))).[12]

McFarlane argues, however, that she may maintain a claim for statutory penalties because First Unum "can be a *de facto* administrator." Pl.'s Opp'n Mem. at 23. The Second Circuit has expressly rejected this argument. Specifically, in *Lee v. Burkhart*, 991 F.2d 1004 (2d Cir. 1993), the Circuit "disagree[d]" with the argument that "under certain circumstances a party not designated as an administrator may be liable for failing to furnish a plan description." *Id.* at 1010 n.5. Eschewing a functional approach to identifying an administrator under Section 1132(c) in favor of a bright-line rule, the Circuit explained that "[r]espect for our proper role requires that we decline to substitute our notions of fairness for the duties which Congress has specifically articulated by imposing liability on the 'administrator.'" *Id.* (quoting *Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1138 n.5 (D.C. Cir. 1989)); *accord Mondry*, 557 F.3d at 794 ("[T]his court and others have held that liability under section 1132(c)(1) is confined to the plan administrator

---

[12] The parties dispute whether the Court may rely upon documents submitted by First Unum in connection with its motion to dismiss. To resolve this motion, however, the Court need not look beyond McFarlane's complaint and documents attached thereto, as McFarlane does not plausibly allege that First Unum is a plan administrator.

and have rejected the contention that other parties, including claims administrators, can be held liable for the failure to supply participants with the plan documents they seek."); *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 843 (6th Cir. 2007) ("It is well established that only plan administrators are liable for statutory penalties under § 1132(c)." (citation omitted)); *Ross v. Rail Car Am. Grp. Disability Income Plan*, 285 F.3d 735, 743 (8th Cir. 2002) (holding that although a party "admits that it had control over claims under the policy . . . assuming that function did not transform it into the Plan Administrator" under Section 1024(b)); *McKinsey v. Sentry Ins.*, 986 F.2d 401, 404–05 (10th Cir. 1993); *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299−300 (9th Cir. 1989) ("Congress has provided for three classes of persons who may be sued as the plan administrator under section 1132(c). Because Aetna was not designated as plan administrator in the policy and is not the plan sponsor, it is not liable under the statute.").[13] Thus, First Unum's alleged control over the plan provides no basis for liability under Section 1132(c).[14]

Accordingly, the Court grants First Unum's motion to dismiss McFarlane's claim for statutory penalties under 29 U.S.C. § 1132(c)(1).

---

[13] The First and Eleventh Circuits, however, have held that a party may be held liable as a *de facto* administrator for failing to disclose plan information. *See, e.g., Law v. Ernst & Young*, 956 F.2d 364, 373–74 (1st Cir. 1991); *Rosen v. TRW, Inc.*, 979 F.2d 191, 193–94 (11th Cir. 1992). As discussed above, the Second Circuit has expressly disagreed with these decisions. *See Lee*, 991 F.2d at 1010 n.5.

[14] The Second Circuit's decision in *Amara v. CIGNA Corp.*, 775 F.3d 510 (2d Cir. 2014) is not to the contrary. *Amara* addressed a claim for equitable relief under 29 U.S.C. § 1132(a)(3), under which parties other than an administrator may be held liable. *See Amara*, 775 F.3d at 528 ("[W]hile ERISA generally does draw a distinction between the roles of plan administrator and plan sponsor, [29 U.S.C. § 1132(a)(3)] can be used to redress harms committed by both types of entities."). Here, by contrast, McFarlane asserts a claim under Section 1132(c)(1), which specifies that only an "administrator" may be held liable under its provisions. *See* 29 U.S.C. § 1132(c)(1). Thus, *Amara*'s conclusion that "the general distinction between sponsor and administrator in ERISA would be inequitable in the circumstances" of that case does not suggest that a party other than an administrator may, under principles of equity or otherwise, be found liable under Section 1132(c)(1).

## CONCLUSION

For the foregoing reasons, First Unum's motion to dismiss is granted in part and denied in part. Specifically, the Court grants First Unum's motion to dismiss McFarlane's claim for statutory penalties for failure to provide plan documents but denies its motion to dismiss her claim for long-term disability benefits.

The Clerk of Court is respectfully directed to terminate the motion pending at Docket No. 11.

SO ORDERED.

Dated:     August 15, 2017
           New York, New York

Ronnie Abrams
United States District Judge