USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 10/12/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHERYLLE MCFARLANE,

    Plaintiff,

v.

FIRST UNUM LIFE INSURANCE
COMPANY,

    Defendant.

No. 16-CV-7806 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Cherylle McFarlane brings this action against Defendant First Unum Life Insurance Co. ("First Unum") to recover disability benefits under the Employment Retirement Income Security Act of 1974 ("ERISA"). Before the Court are McFarlane's objections to the April 17, 2017 Order of the Hon. Katharine H. Parker, which denied two of her motions to compel discovery. For the reasons set forth below, McFarlane's objections are overruled.

## BACKGROUND

The Court assumes familiarity with the factual allegations of this case, which are recited in its August 15, 2017 Opinion and Order. *See* Dkt. 84.

McFarlane is a former assistant nursing director at Independence Care Systems. *See* Compl. Ex. 1 ("Appeal Letter") at 4 (Dkt. 1-1). First Unum issued a group disability policy to Independence Care, through which McFarlane received disability benefits. Compl. ¶ 3; Appeal Letter at 1. On April 28, 2014, McFarlane was diagnosed with fibromyalgia. *See* Appeal Letter at 5. On December 15, 2014, a First Unum representative approved McFarlane's long-term disability benefits. *See id.* at 8. In a letter dated January 14, 2016, however, First Unum terminated

McFarlane's long-term disability benefits, concluding that she had become able to resume the material and substantial duties of her occupation. *See id.* at 9.

On October 6, 2016, McFarlane filed this action, asserting claims for long-term disability benefits and for statutory penalties. *See* Compl. ¶¶ 23–35. McFarlane alleged, *inter alia*, that First Unum improperly terminated her benefits because, as both a plan administrator and payor of plan benefits, it had a conflict of interest. *See id.* ¶ 25.

The parties proceeded to discovery. In a series of interrogatories and document requests, McFarlane requested statistics regarding the liability acceptance rates for certain groups of disability claims specialists at First Unum, including those who receive bonus awards or are terminated. *See* Delott Decl. ¶¶ 4–6, Ex. B–D (Dkt. 74). In McFarlane's view, this information is relevant because it would allow her to conduct an empirical analysis of First Unum's alleged conflict of interest. If First Unum fires specialists who approve benefits more frequently and gives bonuses to those who more often deny benefits, McFarlane argues, it is more likely that First Unum was operating under a conflict of interest. First Unum objected to these requests. On March 13, 2017 and March 22, 2017, McFarlane moved to compel First Unum to respond. *See* Letter from Jeffrey Delott to Judge Parker (Mar. 13, 2017) (Dkt. 57); Letter from Jeffrey Delott to Judge Parker (Mar. 22, 2017) (Dkt. 63).[1]

On April 17, 2017, Judge Parker denied McFarlane's motion to compel in relevant part. *See* Order (Dkt. 72). Judge Parker determined that McFarlane's requested statistics regarding liability acceptance rates were not proportional to the needs of the case, particularly in light of the

---

[1] McFarlane's March 22, 2017 letter clarified the interrogatory and document request numbers for which she sought a response. *See* Letter from Jeffrey Delott to Judge Parker (Mar. 22, 2017).

fact that McFarlane had already been given the opportunity to conduct discovery regarding First Unum's alleged conflict of interest. *See id.* at 8–9. Judge Parker noted, for example, that she had previously permitted McFarlane to depose Adam Peters, the First Unum representative who was responsible for deciding McFarlane's claim, and that she had specifically advised McFarlane that she could ask Peters questions regarding First Unum's alleged conflict of interest. *See id.* at 3. As a cost-efficient alternative to requesting liability acceptance rate statistics, Judge Parker suggested that McFarlane ask Peters whether he or other First Unum employees have any financial incentives to grant or deny claims for disability benefits. *See id.* In light of the discovery McFarlane had been given an opportunity to conduct, Judge Parker concluded that McFarlane's motion was "more akin to a second-chance fishing expedition than the 'limited discovery'" other courts had permitted. *Id.* at 9.

Judge Parker also determined the liability acceptance rates McFarlane sought were of limited relevance. *See id.* at 9–11. Relying on a number of decisions from courts in the Second Circuit, Judge Parker explained that evidence of First Unum's overall acceptance rates, without more, would be of "dubious relevance to the issue of whether the plaintiff's own benefits claim was improperly denied." *Id.* at 9. Judge Parker was also unpersuaded by McFarlane's claim that the statistical evidence she sought was necessary to show that First Unum has a history of rendering biased claims determination. *See id.* at 10. Judge Parker found that this argument "rings hollow" in light of the fact that McFarlane had already presented vigorous arguments regarding First Unum's "well-recognized history of making biased claims decisions," supported by the decisions of other courts that had specifically discussed First Unum's "pattern of abusive tactics." *Id.* at 10–11. Accordingly, Judge Parker denied McFarlane's motion to compel the production of statistical data. *See id.* at 11.

On May 1, 2017, McFarlane filed objections to Judge Parker's order. *See* Pl.'s Mot. for Disc. Obj. (Dkt. 73); Pl.'s Mem. in Supp. of Obj. to Apr. 17, 2017 Order ("Obj.") (Dkt. 75). On May 5, 2017, First Unum filed a brief in opposition to McFarlane's objections. *See* Def.'s Mem. in Opp'n to Pl.'s Obj. ("Def. Mem.") (Dkt. 77). On May 8, 2017, McFarlane filed a reply. *See* Pl.'s Reply Mem. (Dkt. 78).

## LEGAL STANDARD

A district court may designate a magistrate judge to "hear and determine any pretrial matter pending before the court," with exceptions for certain dispositive motions. 28 U.S.C. § 636(b)(1)(A); *see Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). "With respect to nondispositive matters, such as discovery disputes, a district judge shall 'modify or set aside any part of the Magistrate's order that is clearly erroneous or is contrary to law.'" *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, No. 13-CV-816, 2015 WL 5022545, at *1 (S.D.N.Y. Aug. 17, 2015) (alteration omitted) (quoting Fed. R. Civ. P. 72(a)). "Under this highly deferential standard, magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Williams v. Rosenblatt Sec., Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (quoting *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013)). "The magistrate judge's ruling 'is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure and is clearly erroneous if the district court is 'left with the definite and firm conviction that a mistake has been committed.'" *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-CV-9792, 2016 WL 4530890, at *1 (S.D.N.Y. Mar. 24, 2016) (alterations omitted) (quoting *Thai Lao Lignite*, 924 F. Supp. 2d at 512). "The party seeking to overturn a magistrate judge's decision thus carries a heavy burden." *Id.* (quoting *Thai Lao Lignite*, 924 F. Supp. 2d at 512).

4

## DISCUSSION

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Information is "relevant" if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *In re Weatherford Int'l Sec. Litig.*, No. 11-CV-1646 (LAK) (JCF), 2013 WL 2355451, at *3 (S.D.N.Y. May 28, 2013) (quoting *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Proportionality, meanwhile, "focuses on the marginal utility of the discovery sought." *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Id.*

In ERISA cases, "district courts typically limit their review to the administrative record before the plan at the time it denied the claim." *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 60 (2d Cir. 2016); *see also Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003) (explaining that "the presumption is that judicial review is limited to the record in front of the claims administrator" (citation omitted)). However, on an issue such as an alleged conflict of interest, "which is distinct from the reasonableness of the plan administrators' decision, the district court will not be confined to the administrative record." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 174 (2d Cir. 2001). Rather, the district court has

discretion to review evidence outside the administrative record upon a showing of "good cause." *See Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008). "[A]t the discovery stage, the plaintiff need not 'make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement.'" *Trussel v. Cigna Life Ins. Co. of N.Y.*, 552 F. Supp. 2d 387, 390 (S.D.N.Y. 2008); *accord Shelton v. Prudential Ins. Co. of Am.*, No. 16-CV-1559 (VEC), 2016 WL 3198312, at *2 (S.D.N.Y. June 8, 2016).

Judge Parker's denial of McFarlane's motion to compel the production of statistics regarding First Unum's liability acceptance rates was not clearly erroneous or contrary to law. Judge Parker was within her discretion to find that the marginal relevance of this information was "dubious." Order at 9. Of course, evidence that a claim administrator is operating under a conflict of interest is relevant in determining whether the administrator improperly denied benefits. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). Here, however, there is no dispute that First Unum has a structural conflict of interest, as it was responsible for both evaluating claims and paying for claims allowed. Nor does there appear to be any dispute that First Unum has a history of a biased claims administration. As McFarlane documents in her complaint, the Supreme Court, the Second Circuit, and numerous other federal courts have, in the last decade, specifically identified First Unum as an insurer with a well-recognized history of abusive tactics, including erroneous and arbitrary benefits denials. *See* Compl. ¶¶ 7–9 (Dkt. 1). Against this backdrop, Judge Parker could reasonably have concluded that additional information regarding First Unum's firm-wide practices, including its aggregate liability acceptance rates, would be of limited marginal relevance to McFarlane's case.

Judge Parker was also within her discretion to question the relevance of the statistics McFarlane sought on the grounds that they do not relate specifically to her claim. As the Second

6

Circuit has explained, "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010); *see also, e.g., Andrews v. Realogy Corp. Severance Pay Plan for Officers*, No. 13-CV-8210 (RA), 2015 WL 736117, at *7 (S.D.N.Y. Feb. 20, 2015) (explaining that an ERISA plaintiff must "show how the inherent conflict actually affected the Plan Administrator's decisionmaking"); *Hogan-Cross v. Metro. Life Ins. Co.*, 568 F. Supp. 2d 410, 414 (S.D.N.Y. 2008) ("[E]vidence of high rates of denial and termination of claims, in and of themselves, would prove little or nothing."). The statistics McFarlane seeks here are not tied to her claim in particular. Rather, as aggregate statistics, they represent First Unum's resolution of claims for claimants other than McFarlane. Thus, Judge Parker could reasonably determine that these statistics are, in the context of this case, unlikely to show that First Unum's undisputed conflict "actually affected" its decision. *Durakovic*, 609 F.3d at 140.

Judge Parker was also reasonable in determining that a deposition of the First Unum employee who decided her claim would be a more cost-efficient method for McFarlane to obtain the information she sought. In resolving the parties' discovery dispute, Judge Parker properly recognized the "significant ERISA policy interests of minimizing costs of claim disputes and ensuring prompt claims-resolution procedures." *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 295 (2d Cir. 2004). In light of these interests, Judge Parker reasonably suggested that McFarlane focus her investigation on the role that First Unum's alleged conflict of interest may have played in the specific determination of her claim. To that end, Judge Parker concluded that questioning the individual who actually decided her claim on the topics for which McFarlane sought statistics—including, for example, the existence of any financial incentives for disability claims specialists to deny or grant benefits claims—would permit McFarlane to obtain relevant

information without imposing an undue burden on First Unum.[2] Judge Parker's proposal comports with both the proportionality principles of Rule 26(b)(1) and ERISA's goals of minimizing expense and delays in reviewing claims determinations.

It is true, as Judge Parker recognized, that at least two courts in this district have ordered defendants to produce statistics of claim determination rates in ERISA cases. Specifically, in both *Hogan-Cross v. Metropolitan Life Insurance Co.*, 568 F. Supp. 2d 410 (S.D.N.Y. 2008) and *McDonnell v. First Unum Life Insurance Co.*, No. 10-CV-8140 (RPP), 2011 WL 5301588, at *6 (S.D.N.Y. Nov. 3, 2011), district courts granted motions to compel claim-determination statistics, reasoning that "[e]vidence of high rates of benefit denials or terminations reasonably could lead to further inquiry as to the reasons for those actions, which might prove either benign or malignant." *Hogan-Cross*, 568 F. Supp. 2d at 414; *McDonnell*, 2011 WL 5301588, at *6. Judge Parker considered these cases, however, and determined that, under the circumstances of this case, McFarlane's request for similar statistics was not proportional to her needs. *See* Order at 8. In particular, Judge Parker reasonably distinguished both *McDonnell* and *Hogan-Cross* on the ground that McFarlane, unlike the plaintiffs in those cases, has already had an opportunity to explore First Unum's alleged conflict of interest yet had not adduced evidence suggesting that requests for further information, in the form of the statistics requested, would be appropriate. The Court does not find this conclusion clearly erroneous or contrary to law.

In sum, McFarlane has not provided a sufficient basis for modifying or setting aside Judge

---

[2] McFarlane's argument that Peters was a mere "clerk" without any "independent judgment" in deciding her claim is not persuasive. *See* Obj. at 14. During his deposition, Peters testified that he was the "owner" of McFarlane's claim and drafted the letter terminating her benefits. *See* Def. Mem. Ex. 1 at 120:10–14. The fact that a supervisor ultimately approved Peters's draft letter does not suggest that Peters lacked sufficient knowledge to provide testimony regarding First Unum's evaluation of McFarlane's claim.

8

Parker's decision.

## CONCLUSION

For the foregoing reasons, McFarlane's objections to Judge Parker's denial of her motions to compel discovery are overruled. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Entry 73.

SO ORDERED.

Dated:    October 12, 2017
              New York, New York

                                          Ronnie Abrams
                                          United States District Judge